and others. Mr. Gagliardo. Good morning, Your Honor. Good to have you with us, sir. Thank you, Your Honor. Good to be here. I have with me at the council table today Gary Gagliardo, and Ms. Smith and her son are present in the courtroom. Very good. I'm here, of course, to represent Ms. Smith. This case raises significant questions about constitutionally protective due process rights, not only for Ms. Smith, but for public employees generally. The case was dismissed by the district court for failure to state a claim, and in doing so, the district court largely adopted the reasoning of Egan v. Navy, which comes from the Supreme Court, and Jamil v. Secretary, which comes from this circuit. As I will explain momentarily, that is the incorrect law. It is factually distinguishable in many very significant ways. This case really is better guided by Green v. McElroy from the Supreme Court, and again, I'll come back to that in a minute and explain why we take that position. So very briefly, the pertinent facts are that Ms. Smith was a loyal employee of the St. Mary's County State's Attorney's Office, who was told in July of 2019 that she was suspected of leaking confidential information that was contained in a database referred to as OptiView. OptiView is a computer database. It is a system used by the Sheriff's Office in St. Mary's County, the State's Attorney's Office in the county, as well as the District Court of Maryland and the Circuit Court for the county. There is no evidence, and this is critical, there is no evidence to support the District Court's conclusion or the assertion by the appellees that the Sheriff had the right to ban or to revoke access by an employee outside of his own office, in this case, the State's Attorney's Office. There's no reference to any statute, any regulation, any policy. But in fact, what the Sheriff did was prior to Ms. Smith being... So in other words, why does it matter whether there's a policy that says, if you reveal confidential law enforcement information, you will be fired? Right? That seems like sort of the thing that says, you know, there might not be a policy that says if you steal things, you will be fired. But we all know, if you steal from somebody, that that's likely to have consequences if it's related to your job. Right? And so if you reveal confidential law enforcement information, like, it doesn't seem like we need a policy to say that, like, when you work in the law enforcement field, that that's likely to get you fired. Understood, Judge Richardson. Here's the first distinction. It's not the Sheriff's call to fire, to hire, fire, discipline somebody outside. Totally fair, right? But, okay. But that's my point, right? So she goes from her, she works in the County Attorney's Office, she goes to the Sheriff's Office, and she steals something. Right? It seems like to me, there doesn't need to be a policy for the County Attorney to say, we're going to fire the thief. Right? I mean, that doesn't strike me as, like, necessary to have that written down in paper. The issue is, did the State's Attorney have a reason to fire her? She obtained her authority to access the system from the State's Attorney, not from the Sheriff. If anybody could recall... So you're saying that this is what I'm having trouble with, right? So your suggestion is the County Attorney... State's Attorney. The State's Attorney. I'm sorry. The State's Attorney learns from the Sheriff that she's a thief. Right? My hypothetical. Right? I know this isn't about theft, but... No, I understand. Right? The Sheriff says, she came in, she stole whatever it is. Widgets. That the County Attorney can't fire her unless there's a policy that says we can fire thieves? No. What I'm saying is that the State's Attorney can't fire her unless he honors her constitutionally guaranteed due process rights. And the issue in this case is... I know, but you were asking, you said this can't happen because there's no policy. Right? I'm just trying to, literally trying to understand your argument. Right? You said there's no policy. Right? And what I'm trying to get at is why does that matter? Why is that either part of due process or otherwise that you can fire a thief or you can fire someone who's giving away law enforcement information? Let me clarify one thing. She is suspended under suspicion of leaking information. She is fired for merely accessing the database, which her immediate supervisor and Assistant State's Attorney says it happens and when it does... It's a confidential database. It's a confidential database. Is it, what's the, does it have a security classification like... No. Secret or top secret or... No, Your Honor. It's recognized as confidential. Right. It's law enforcement information. It is law enforcement information. It's... It's criminal... It's information relating to... What? Three different things. Investigation by the Sheriff. That's pretty important stuff. Investigation by the, I had my cell phone because there's something on there I want to read to you at the court. Well, you won't be, you're not the person to have that happen in court. My sincere apologies, Judge. It's not something that should happen. Three kinds of information. One are the investigation and police procedures from the Sheriff's Department. The second are prosecutorial documents, charging papers and so forth, motions, whatever happens in the criminal procedure either before the District Court or the Circuit Court. And then, of course, there are the court documents, which are the disposition of the... Does it include grand jury information, for example? I honestly don't know if it does or not. I honestly don't know. I honestly don't know. But I want to clarify... But it's considered confidential. You agree with that? Yes, I do. All right. What I want to... And she accessed it and wasn't authorized to. She denied that she accessed... She accessed it and she wasn't entitled to. This is a 12B6, don't they have to... Correct. We have to take the complaints true. If she accessed it, it was without authority. She denies having accessed. Her immediate supervisor, the Assistant State's Attorney, says this happens. Her words, not mine. It's not a big deal. The reason, Judge Richardson, that I was talking about policy and statute is because the District Court said that it was the Sheriff's... Implied to the Sheriff was the sole authority to determine access or denial of access. It's not so. Let me quickly move to Egan and Jamil because here are the significant differences. Egan is the Supreme Court case. Yes, sir, it is. So in those cases... First of all, Egan was a question of the jurisdiction of the Merit Systems Protection Board. Egan was fired because his security clearance had been revoked. But he had an opportunity and a right to appeal the revocation by a separate process. So too, Jamil. Not so, Ms. Smith. There was no alternative process. And that really gets to the heart of the matter. Is that your allegation in your complaint? And I'm talking about the allegation as it relates to the Sheriff. I understand the allegations as to the other entities within the county and our state. But where in your complaint do you allege that the problem is there was no right to appeal or challenge the decision of the Sheriff to deny access to OptiView? Because that's the question as it relates to the Sheriff, isn't it? It is. You say there are no rules, regulations, or statutes providing him authority. And he's without authority to permit or revoke employees of the State Attorney's Office to access OptiView. Your challenge is there is no rule. Therefore, there's a violation. What I'm saying is that the Sheriff's decision to revoke Ms. Smith's access tainted the entire process from that point forward. He revoked her access in August. She wasn't fired until October. So then what is your claim against the Sheriff if you're saying it's his conduct that tainted other processes? But you've sued the Sheriff as if he has done something wrong. I'm trying to understand what's the property interest that she has in access to confidential information or sensitive information? Because this court has said there is no right property interest in access to sensitive information. Where do you say you have that? Ms. Smith clearly has a property right to the job. All right, but I'm not asking you about the job. I'm asking about OptiView and access to the information. Where is that allegation? Because remember, this is a 12B6 motion. Where do you say in the complaint where she alleges she has a property interest or a property right in access to the information? Let me give you an analogy. I want to know where you say in the complaint because the problem is I'm supposed to be evaluating this case on what you said in the complaint. In the complaint, we said she did not have a meaningful opportunity post-termination to challenge the Sheriff's decision. That revolves around both whether or not he had any authority to intervene in the actions of the… But don't you have to tell me first that there is a property interest that she has? It's a condition of employment. It's the same thing as having a driver's license or admission to the bar as a condition of employment. You may not have a constitutional right to a driver's license, but if it's a condition of your employment, you have the right to notice and an opportunity to fix the ostensible failure to have or maintain a driver's license or a bar admission or whatever it might be. You cannot… They're so inextricably linked that you cannot separate out the access from the right to the job. So that justifies why she's suing her employer? Correct. I completely understand and I know you're going to get to that. I'm trying to figure out then how does she sue the Sheriff because the Sheriff didn't fire her? The only relief we asked for the Sheriff and we amended it to be solely an injunction to prevent him from interfering with the employment process, which was outside of its purview. So we're not seeking any other relief from the Sheriff other than to keep him… That's effectively telling him that he has to grant her… To take the person who's giving away law enforcement information, Sheriff, you must give her access to the confidential database, which means the only way you can do that is if she has some property interest in effectively confidential information. She didn't give any information. The Sheriff's own investigation concluded that. The culprit, so to speak, the culpable party probably is a better way to put it. The culpable party was a woman by the name of Donna Rustin who worked for the Sheriff's Department. Her son, Nick Rustin, was an associate of Alex Murphy, the criminal… But can't we agree, though, that the password was on the monitor and therefore others had access to it and therefore she did not conceal it? So whether she gave it to someone, it was made available publicly, which is a violation of the policy. She was found not culpable of that charge. The Grievance Review Board specifically found that that was not a violation. I think what… So you're saying she didn't get reprimanded for having the password taped on the monitor? No, she got reprimanded for not meeting at a designated time, which she said was the result of a death in the family. And the board said that she should have been reprimanded for that, exonerated her from the accusation of taping the password on the front of her computer, found her culpable of… And so you're saying the Sheriff can't say, I'm uncomfortable with that type of unfettered access because it was taped to a monitor, and therefore I don't want that individual to have access to confidential information, and you're saying that's a property right that she has? Sheriff never said that, first of all. Secondly, what she has a right to is the job, and she has the right to be notified if there is a condition of her employment that's not being met. Pre-termination, she was not told that if she merely accessed the database, that that was an offense for which she could be fired. What she had been told and what she had every reason to believe, notwithstanding how the District Court conflated a number of events to say, well, she really did know what was going on. She only knew that she was facing discharge because she was thought, at some point in time, later found not to be true, of having provided Alex Murphy through Nick Rustin confidential information. In fact, the Sheriff's own investigator says, I think she just looked at it out of curiosity. And her supervisor says, people do that, and it's not a big deal. And yet the grievance board says, we're going to fire you. Now, they claim they made an independent decision. That isn't so. I'm out of time, so I'm just going to say this in one sentence. If you look at the motion to dismiss by the county that resulted in the order from which we appeal. It was an opinion that Judge Zenitz wrote. Yes, yes, Your Honor. Very thorough, very thorough. It's a very thorough opinion. Very thorough. And she recites that your client had veiled herself to every level of review, and spells it all out. Judge Zenitz does. She does, and she's applied the wrong law, and she's conflated incidents. The inferences are incorrect. She's ignored, as did the grievance board, the ample exculpatory evidence, including the conclusions of the Sheriff's investigator, including the fact that they extrapolate from a series of unlikely events that Ms. Smith must have known the criminal identification number of the Murphy file, which was the only way she could get into it. I'll do this in one sentence. She would have to have known there was an incident that had occurred, that Murphy was involved, that charging papers had issued, that the charging papers had been delivered to a particular place, and that she would have gone to that place to get the criminal number so she could get into the system. There's no proof of any of those five elements. It's all conclusory, speculative. It's a case based on suspicion, maybes, couldbes, but not evidence. And she did not have a meaningful post-termination issue because the charge had changed from leaking to merely accessing and because of the defects that I've just enumerated. This is very much akin to, in the criminal context... If you want to take some of your rebuttal time, you can do that, but you've used up your time. I'll stop here. I just was going to mention Brady v. Maryland, and I'll do that in the rebuttal, sir. Thank you very much. Thank you. Mr. Karpinski? Good morning. May it please the Court, Kevin Karpinski, on behalf of the Board of County Commissioners for St. Mary's County. My colleague, Carl Zacharias, is here on behalf of the Sheriff, and I'm going to focus my arguments on the claims against the county for pre-termination, post-termination, alleged violations of the 14th Amendment. But before I do that, the Court had some questions about the OptiView database, which I'm sure Mr. Zacharias will touch upon. But this is unquestionably a confidential database. This has information, for example, the Murphy file that's at issue. This was an ongoing investigation, so to allow anyone to access it improperly would be totally inappropriate. And so that is what was sort of the— Can I just be—I want to make sure I understand what the facts are here. Are the facts clear that she accessed Murphy's file without a legitimate reason? The facts are clear that the Murphy file was accessed using her password and her login credentials, and that the Grievance Review Board, as well as the county, as well as the state's attorney and the sheriff, all concluded that it was Ms. Smith who did access that Murphy file. And for our—I guess the rub I've got is, for our purposes, whether that's really true or not doesn't matter, does it? I mean, because we have like a due process question. Like, did she get enough process to determine whether that's right or not? We're not a, like, super review board to determine whether those determinations were correct or not, or that, you know, Ms. Ruskin or somebody else did it, right? That, you know, it was the, you know, some other person, right? They concluded that, and the question only is, like, did she have enough process to challenge that? That's absolutely correct, Your Honor. This court's role, as well as the district court's role, was simply to determine whether there was adequate procedural due process under the 14th Amendment, not whether— Right, and she got a specific notice. Judge Zenas spells it all out here and quotes the notice, right? Yes, Your Honor. And she says, Judge Zenas, that Smith availed herself to every level of review. Yes. And had an informal grievance, and she appealed to the GRB, and the GRB conducted a two-day hearing, and they affirmed the termination with a nine-page letter decision. I mean, the process is spelled out there. Now, go ahead. Well, yes, Your Honor, and I do agree. Judge Zenas' opinion is very detailed. There was obviously extensive pre-termination notice starting on the 15th when they met with Ms. Smith, followed up with an investigation with Sergeant Merritt on the 29th, followed up with another meeting with the county on September 27th, which ultimately culminated in her October 7, 2019 termination notice. So, as this Court has pointed out, as the Supreme Court has pointed out, that pre-termination notice is just simply an initial check to make sure that there is not a wrongful termination. Ms. Smith clearly was on notice as to what the issue was, because at every turn, it all focused on whether she had accessed this Murphy file. So there clearly was adequate pre-termination notice, and as Judge King has pointed out, there was extensive post-termination notice. We had an informal hearing, a grievance in front of the State's Attorney, followed by an informal hearing in front of the Director of Human Resources, followed by a two-day hearing in front of the Grievance Review Board, where I think 12 people testified. There was evidence that was introduced, and then ultimately, that was affirmed unanimously by the Board of County Commissioners. So there was extensive... Do you think that much is required by the due process clause? The due process clause, in order to fire somebody, requires that many steps? Absolutely not, actually. This is a case where this was due process plus. I mean, there were more steps in the process here than would be required to meet the minimum threshold of the 14th Amendment for procedural due process. And so there was obvious... The process was both extensive pre-termination and post-termination. I'm not going to belabor the point, because I think Judge Dennis' opinion is very comprehensive. I'm certainly happy to answer any questions the panel may have, if you have any. But unless you do, I will submit. Thank you very much. Let me see. Mr. Dawson, do you have anything else you want to add? Thank you very much. Good to have you with us. Mr. Zacharias, and you represent the Sheriff of St. Mary's County. I represent the Sheriff of St. Mary's County. What's the county seat of St. Mary's County? The county seat is Leonardtown, or St. Mary's City. I think it's Leonardtown. I thought... Yeah, it's Leonardtown. Leonardtown. Right the first time, I should have questioned myself. It's southeast of... Or southwest of Baltimore? It's well south of Baltimore. You have to go... Down towards Virginia somewhere? Yeah. It's a long drive. It's not too far from here, Your Honor. But the claims against the Sheriff in this case, as we've already flushed out here, are for alleged due process violations in the Sheriff's decision to revoke, dismiss access to the Sheriff's records of ongoing investigations through the OptiView database. The district court below correctly dismissed her claims under the Supreme Court's holding of Department of Navy v. Egan and its progeny in this court because there is no recognized due process rights in a government employee's access to restricted, sensitive, confidential databases such as the OptiView database. The district court... What's your argument? Your colleague says, all right, fine. But that rule doesn't apply if that somehow interferes with the employment situation. So you don't have a property right in the database or top secret clearance, but that if that's necessary for your job, that that transforms it into something else. What's your response to that? Your Honor, first, there's scarce legal authority to support that proposition. Yeah, I acknowledge that, but why is it wrong? And number two, it's just plain bad policy. Because if we're to adopt that as the rule, Your Honor, you're compelling the sheriff to leave open, dismiss access for someone who is suspected of breaching confidential information in a restricted access database and to require someone like the sheriff or someone in charge of national security or the FBI or something like that to maintain someone's access so that they can be afforded due process rights. That would potentially risk compromising national security, local law enforcement, and other public safety and security interests. That's sort of the point of EGAN is what you're saying. That's exactly the point of EGAN, Your Honor, and its progeny is to say that no... And what EGAN very clearly said is that no government employee... There is no right to accesses for these types of confidential sources that are maintained by government agencies who are charged with keeping public safety and national security. Is the sheriff charged with maintaining or owning that database? I think it's a combination. So the sheriff is funded through the county, and the IT systems are provided through the county. And so the sheriff's records keeping, it's all maintained by county IT personnel, and I believe the record does reflect that. And so the county is maintaining the system. So does the sheriff regularly grant access and or restrict access to that database? The record doesn't reflect that. But what the record does reflect is that the database contains the records of the sheriff's ongoing criminal investigations. That includes confidential informants and things like that? Exactly. Grand jury information? I don't know if the record specifically spoke to grand jury information, but it's not a strike... Well, somebody mentioned something about prosecutorial material. Yes, exactly. I mean, imagine if the prosecutors also have access to it. Presumably there is grand jury material and other things of that nature on there, and that's all the more reason why keeping access to this system very tight is very important. And in the event of a suspected breach, if the sheriff or the state's attorney or whoever has the ability needs to shut off that access, they have... The state's attorney there is like the prosecuting attorney? Correct, John. There's one in each county? Yes, there's a state's attorney in each county in Maryland. It's not a district attorney. I'm from West Virginia. We call them the prosecuting attorney. I think down in South Carolina they may call them the solicitor. I know in New York they call them district attorneys. Yeah, the district attorneys. But the state's attorney here, there's no... The county attorney... We're not talking about the county attorney. We're talking about the state's attorney. Not talking about the county attorney. Now, the county attorney, I believe, stepped in for the grievance proceeding. That was the county attorney's involvement in this case. But he's not the prosecutor. Well, he was the prosecutor for the grievance, for Ms. Grievance. He handled the grievance. Okay, but he's not the prosecutor on the Crown. He doesn't write indictments. Correct, correct. Your Honor, I think the only argument that I think Ms. Smith makes in an effort to try to evade the barring effect of Egan is to sort of infantilize the sheriff into this idea that because he's only a local law enforcement agency, Egan and its progeny shouldn't apply because that only applies to federal officials who are charged with guarding national security interests. There's no legal support for that argument whatsoever. And quite frankly, the district court correctly agreed below with the sheriff that for all intents and purposes, the sheriff's interest in the OptiView database and the information contained in there was analogous to the federal government's interest in national security clearances. And just to echo what Mr. Karpinsky had already said, that the decision to revoke her access was not because the sheriff said that she, in fact, leaked the information to the suspect identified as Mr. Murphy. The sheriff's decision to revocate the access was based on the information that the breach came from her terminal under her credentials at a time when she was at work and there were no other potential suspects within her office that were identified. And that somehow, after she accessed that information, Mr. Murphy, who was the suspect in the investigation, did get that information. And under those circumstances, the sheriff was well within his discretion, as the Egan court described, broad discretion, to revoke her access immediately and let her employer, the state's attorney, sort of deal with the fallout. And that's exactly what happened here. Can I ask one question? You also raised, as an alternative grounds for prevailing, a sovereign immunity argument. And we've got some case law that suggests that you can insist upon a sovereign immunity ruling even if you were to prevail otherwise. Are you doing so here? I assume you're not insisting on such a ruling if you were to otherwise prevail. Your Honor, we are not insisting. The law on that subject in Maryland is murky enough as it is. I don't want to do anything. I thought so. I just wanted to make that clear. Thank you. We'll rest on brief on that issue, the immunities issue. The court will need to address it if it goes past the due process question. So unless there are any other questions from the court, we'd ask the court to affirm. Thank you very much, sir. Thank you. Mr. Gagliardo? Thank you, Your Honor. Just a couple of quick points. First of all, failing to disclose exculpatory information, analogizing to Brady v. Maryland, realizing that liberty interests are treated or afforded more due process than property interests, but still the failure to disclose and to properly consider exculpatory evidence of which there, as I said previously, an abundant amount is a violation of due process. I've asked the court. Judge Zinnes is a highly respected jurist. She did write a very thorough opinion. But the question is not how much did she write, but did she get it right? And so let me talk about Brady just a bit more. Brady involved national security. Those things can't be revealed under,  Are you talking about Brady or Egan? I'm sorry. Thank you, Judge. Egan. Okay. I just want to make sure I'm following. Okay. I appreciate the help. I can use all the help you're willing to give me. And so Egan's, the data that Egan was concerned about, similarly Jamel, are things that cannot be revealed outside of a certain circle. What about the stuff in Optivision? Can I pause and just ask you a question? Because I didn't remember the Brady argument, going back to Brady, I didn't remember the Brady argument being made. And when I just searched your briefs for the word Brady, I don't see it. Is that an argument that you made and that we have any authority to address? Was it made below? Was it made in your briefs? Or are you just sort of throwing it in now? We talked about exculpatory matters, I believe, in the brief. We did not, you're correct, we did not refer to Brady. I don't think we're precluded from raising new argument as opposed to raising new issues. Excuse me, on appeal. Let me say something about, so anyhow, to close the circle, Optiview material, all the things we've discussed about, are discoverable. They're discoverable by criminal defendants in the course of the prosecution. That information has to be revealed. It is not analogous. I'm sorry, can I just go back and make sure I'm following? Because I just looked through for exculpatory and I don't see anywhere where you say they failed to turn over exculpatory evidence. There's reference to exculpatory information, right? You describe what you claim to be exculpatory. But I didn't see, and I admit, I'm a quick look, but can you tell me where in your brief you argue that there's a due process violation for the failure to disclose exculpatory information? I think you're correct to say that it wasn't articulated as you've just phrased it. I was trying to articulate it as you raised it. That's what I'm trying to figure out. Have you actually made this argument? I'm just trying to be candid with you to say that we may not have raised it in the brief, but I don't think that's fatal to it. There's a process by which a defendant would get exculpatory information, though, not the process of going through surreptitious third party. Absolutely agree. But I have to come, I'm sorry, Judge, I didn't mean to cut you off. If I can go back. Pre-termination she's told that what she is accused of is leaking. She is not told at any time, any of the meetings and proceedings that Mr. Karpinski referred to, is she told that mere access is a reason for termination of employment. And her supervisor says it's not. It's, quote, no big deal. Her words, not mine. There's so many things were conflated to assure that Ms. Smith would not remain employed. Anybody can guess what the motivation is. We have a new state's attorney in St. Mary's County. It's not the state's attorney then. His deputy succeeded him in a contested election. That aside, talking about, as Mr. Karpinski said, the only proof was that a log showed that the IP address of the computer assigned to Ms. Smith accessed the database. That's analogizing it to a criminal case, the murder weapon. It was owned by Joe. Where's the proof that Joe used the murder weapon? There isn't any. So there's no proof that the IP address was used is not proof that Ms. Smith did anything. Secondly, the IT witness called by the county was questioned. Did you check to see if there was hacking or spoofing? He said no. Was there a forensic examination? Not by the county. Impossible to do by Ms. Smith. She was excluded from the premises and denied access to the system. All right. So this is a stack deck. And based on supposition, maybes and sort ofs and couldbes, they say, well, she must have done it. That is why her due process rights were violated. The pre-termination notice didn't tell her mere access. The post-termination proceeding was clearly tainted by the sheriff's report. Well, here's what the county said in its motion to dismiss that resulted in the order from which we appealed. Although Smith claims that the GRB erred by failing to consider whether a lesser penalty generally would be appropriate, her argument is generally unpersuasive. Because the sheriff's office revoked Smith's access to OptiView, Smith would be unable to fulfill the duties associated with her position. And he refers to the fact that Buffy Giddens, the assistant state's attorney, said that access was part of the job. Given that Smith's access had been revoked by the sheriff and that OptiView access is generally a prerequisite for one to occupy her position or any position within the state's attorney's office for that matter, the GRB could not have effectively fashioned a lesser penalty as Smith requested. If that's true, then they couldn't fashion a penalty, the ultimate penalty, of discharge. Despite anything that the grievance board says or counsel argues, it is clear from this statement that the sheriff's revocation was controlling. It was not made known. Ms. Smith was told the sheriff had revoked her access pre-termination. She was not told when, why, or anything else. That is a violation of due process. Despite a very lengthy opinion, there are defects. Let me very briefly, since I didn't get a chance to mention it before, in Green v. McElroy, McElroy was fired because his security clearance had been pulled but had been pulled by an agency that didn't have authority to pull it. Again, Judge Richardson, that's why I go back to the statute. But is it your position that the sheriff didn't have the authority to pull the access to the information? There is no indication that he did. He never granted her access in the first place. He never monitored her activity or the activity of any other employee of the state's attorney's office. It only came up because Murphy himself, kind of unusually, Murphy himself tells the sheriff investigating, collecting a routine DNA sample, I got information. I got it from Nick Rustin. And then they start looking. They find a computer log and they say, oh, it's probably Smith. But the sheriff then investigates and says, oh, it's not Smith. She didn't give this to Rustin. She didn't give this to Murphy. She's exonerated of that. So let's switch up. Now let's say that mere access, not a big deal, but let's say the mere access is Brown's determinate. That's why this process was tainted, faulty, and failed to meet the requirements of due process. Your red light's on there now. Thank you. It's only 16 more seconds. I just ask that the court look carefully into the due process violations as I've articulated them and remand with instructions to reinstate the amended complaint. Thank you, sir. We'll come down and greet counsel. You need a break. You need a break, sir.
judges: Robert B. King, Julius N. Richardson, Joseph Dawson III